## Commonwealth v. Pruitt

C.P. of Berks County, no. CP-06-CR-0006003-2002.

*Jonathan H. Kurland, assistant district attorney,* for Commonwealth.

*Andrew J. Lovette,* for Pennsylvania State Police.

*Michael J. Cammarano, P. David Maynard, Allan L. Sodomsky, Lara Glenn Hoffert,* and *David M. Osborne,* for defendant.

STALLONE, *J.,* January 12, 2011—

## MEMORANDUM OPINION

On April 29, 2005, a jury found the appellee, Michael Pruitt, guilty on charges of first degree murder,[1] robbery,[2] burglary,[3] rape[4] and involuntary deviate sexual intercourse,[5] all arising out of the strangulation death of Greta Gougler, age 69, which took place on September 28, 2002 at her home located at 521 North 9th Street in the City of Reading.[6]

Inasmuch as the commonwealth had previously provided written notice to the appellee of its intent to seek the death penalty under the Pennsylvania Sentencing Code upon a conviction for first degree murder,[7] the hearing on the penalty phase was held before the same jury. The jury returned a verdict of death, which was molded by this court into a formal sentencing order that was placed into

1. Title 18, 18 Pa.C.S.A. section 2502(a) (Supp. 2011).
2. Title 18, 18 Pa.C.S.A. section 3502(a) (Supp. 2011)
3. Title 18, 18 Pa.C.S.A. section 3701(a)(1)(i) (Supp. 2011).
4. Title 18, 18 Pa.C.S.A. section (3121)(Supp. 2011).
5. Title 18, 18 Pa.C.S.A. section 3123(a)(1) (Supp. 2011).
6. The commonwealth withdrew additional charges of criminal trespass, aggravated assault (manifesting extreme indifference to the value of human life), theft by unlawful taking or disposition and receiving stolen property prior to the submission of the guilt phase of the case to the jury.
7. Title 42, 42 Pa.C.S.A. section 9711(d) (Supp. 2011).

the official record on May 3, 2005.

We deferred sentencing on the other convictions so that the Pennsylvania State Sexual Offenders Assessment Board could conduct an assessment of the appellee as required by Pennsylvania's "Megan's Law statute,"[8] resulting from his convictions. Following a thorough evaluation conducted by Dean Dickson, a licensed psychologist, which was placed into the form of a written report,[9] the board preliminarily found the appellee to be a "sexually violent predator." Upon further request by the appellee, he was independently evaluated by Dr. Robert Gill, a sex therapist, who also prepared a written report in which he reached the same conclusion as the board.[10]

Following an evidentiary hearing held in accordance with the "Megan's Law statute," this court found the appellee to be a "sexually violent predator" as a matter of law.[11] We then sentenced him on the remaining charges of robbery, burglary, rape and involuntary deviate sexual intercourse to a cumulative term of imprisonment of not less than forty years nor more than eighty years in a state correctional facility with credit for 937 days time served,[12] to run concurrently with the death sentence imposed on

8. Title 42, 42 Pa.C.S.A. section 9791 et sea. (Supp. 2011).

9. Mr. Dickson testified at the "Megan's Law" hearing later held before this court. His report was marked and admitted into evidence as Exhibit 2 at the hearing.

10. Dr. Gill testified at the "Megan's Law" hearing subsequently held before this court and his report was marked and admitted into evidence at that hearing as Exhibit 3.

11. The order entered at the conclusion of the "Megan's Law" hearing was filed on January 10, 2006.

12. We imposed a sentence of ten to twenty years for each of these offenses, with the sentences for burglary, rape, and involuntary deviate sexual intercourse to run consecutively to the sentence for robbery.

May 3, 2005, for first degree murder. A timely appeal to the Supreme Court of Pennsylvania followed, at which time this court appointed Allan L. Sodomsky, Esquire and Lara Glenn Hoffert, Esquire as counsel for the appellee. The Supreme Court affirmed the judgment of sentence by opinion and order filed on July 23, 2008. The highly experienced Mr. Sodomsky proceeded to file an application for reargument on the appellee's behalf, which was likewise denied by the Supreme Court.

On May 13, 2009, the appellee timely filed his first petition for relief under the post conviction relief act[13], setting forth multiple grounds for his request that his death sentence be vacated and that he be granted a new trial. David M. Osborne, Esquire, of the Federal Community Defender Office for the Eastern District of Pennsylvania, capital habeas corpus unit, entered his appearance for the appellee. Following the entry of his appearance, Mr. Osborne filed an amended first petition for relief on the appellee's behalf, to which the commonwealth has filed an answer.

What now brings this matter back to the Supreme Court for its review is a motion for discovery filed by the appellee on July 9, 2010, pursuant to Pa. R. Crim. P. 902(E)(2). Pursuant to that motion, the appellee sought the production of certain documents and other information from both the commonwealth and the Pennsylvania State Police, in connection with this post-conviction proceeding. Upon reviewing the motion, and being satisfied that good

---

13. Title 42, 42 Pa. C.S.A. § 9541 et seq. (Supp. 2011).

cause[14] had been shown for the discovery requests, this court granted the motion by order entered on July 19, 2010.[15]

---

14. All scripted or otherwise highlighted language appearing in this memorandum opinion is for emphasis only.

15. The text of our order reads as follows:

And now, this 19th day of July, 2010, petitioner's motion for discovery is hereby GRANTED. It is hereby ordered as follows:

1. The Berks County District Attorney's Office and the Reading Police Department shall produce to petitioner's counsel within fourteen days of the date of service of this order the following:

a. All correspondence, memoranda, notes, reports, records, recordings and/or any other documents concerning Sean Peterson;

b. All correspondence, memoranda, notes, reports, records, recordings and/or any other documents concerning Ariel Cortez;

c. All correspondence, memoranda, notes, reports, records, recordings and/or any other documents concerning interviews or statements of any and all individuals called to testify at trial;

d. All material information in the possession of the commonwealth that has not been previously disclosed;

e. All correspondence, memoranda, notes, reports, records, recordings and/or any other documents concerning the interrogation of and statement given by petitioner to the Reading Police Department;

f. All correspondence between the Berks County District Attorney's Office or the Reading Police Department and the Pennsylvania State Police Laboratory Division concerning errors discovered or suspected in the work of the Laboratory Division on this case; and 2. The Pennsylvania State Police shall produce to petitioner's counsel within fourteen days of the date of service of this order the following:

a. All editions and versions of the Pennsylvania State Police Laboratory Division's quality control procedures dating back to 200;

b. All documents describing the sample handling and testing procedures of the Pennsylvania State Police DNA Laboratory and Serology Laboratory dating back to 2000;

c. All audit reports relating to the operations of the Laboratory Division dating back to 2000;

d. All reviews or audits relating to the Laboratory Division's quality control system dating back to 2000;

e. All copies of the Laboratory Division's testimony review policy dating back to 2000;

f. All editions and versions of the Laboratory Division's proficiency testing policy and procedures dating back to 2000;

g. The professional personnel files of Ranae Houtz, Lisa Mihalacki, Michael Brincat, Kenneth Mayberry and Christine Tomsey, including but not limited to the results of any proficiency testing, any documents regarding the technical review of their work, any information regarding their professional training; and

On July 28, 2010, the commonwealth and the Pennsylvania State Police each filed a motion for reconsideration, requesting, in the alternative, (1) that the court vacate its order and deny the appellee's motion for discovery, (2) that the court vacate its order and schedule oral argument on the motion, or (3) that the court grant an extension of time for the commonwealth of Pennsylvania and the Pennsylvania State Police to comply with the order.[16] Upon review, this court granted the extension of time requested by both the commonwealth and the Pennsylvania State Police, giving them until September 1, 2010 to provide the requested discovery to the appellee. This was done in the form of two separate orders, both entered on August, 2, 2010.

Instead of complying with that order, the commonwealth filed a petition for review and the Pennsylvania State Police filed a notice of appeal. As a result, we are filing this memorandum opinion for the purpose of addressing the merits, in support of our July 19, 2010 and subsequent August 2, 2010 orders.

At the outset, we begin with Pa. R. Crim. P. 902(E)(2), which provides that:

On the first counseled petition in a death penalty case,

All documents related to the audit of Ms. Houtz's work and her remedial training in or about 2002-2003.

The record indicates that the commonwealth was formally served with a certified copy of this order on July 21, 2010. The record further indicates that the Pennsylvania State Police was informally served with a copy of this order by counsel for the appellee on July 21, 2010, followed by formal service of a certified copy of the order by the Berks County Clerk of court s on July 28, 2010.

16. The commonwealth also proposed a fourth alternative, that being the denial of its motion for reconsideration. The Pennsylvania State Police did not provide for such alternative.

no discovery shall be permitted at any stage of the proceedings, except upon leave of court after a showing of good cause.

In Pennsylvania, a showing of "good cause" requires more than just a generic demand for potentially exculpatory evidence, in the form of a "fishing" *Commonwealth v. Carson*, 590 Pa. 501, 571, 913 A.2d 220, 261 (2006); *Commonwealth v. Chambers*, 570 Pa. 3, 31, 807 A.2d 872, 889 (2002). As a result, a general request for discovery by the appellee is insufficient to establish "good cause," particularly where it is not clear as to why the petitioner's counsel cannot obtain the requested documents or information from trial counsel. *Commonwealth v. Collins*, 598 Pa. 397, 455, 957 A.2d 237, 272 (2008); *Commonwealth v. Williams* 557 Pa. 207, 222, 732 A.2d 1167, 1175 (1999). And finally, a showing of "good cause" cannot be made where the appellee has not shown that the requested documents or information in fact exist. *Commonwealth v. Bridges*, 584 Pa. 589, 595, 886 A.2d 1127, 1131 (2005).

In our opinion, the appellee's motion for discovery is not simply a generic demand for potentially exculpatory evidence, such that he is merely attempting to engage in a "fishing expedition." On the contrary, each of the appellee's discovery requests is narrowly tailored to the specific factual allegations set forth in his counseled, 395-paragraph amended first petition for relief.[17] Moreover, not only has the appellee sufficiently attempted to identify

17. We also note that the appellee's amended first petition for relief is accompanied by a two-volume Appendix containing fifty separate documents relating to these allegations.

specific documents that he claims were not produced either during pretrial proceedings or at trial, he has likewise satisfactorily explained, where necessary, why certain documents or information that he is requesting could not be obtained from trial counsel. And although the commonwealth has raised the spectre of attorney "work product" privilege as a legal basis for denying the motion for discovery, this is nothing more than, in our opinion, a "red herring," since the commonwealth has failed to provide this court with any factual basis for that claim.

We also believe that our decision to give both the commonwealth and the Pennsylvania State Police an extension of time to provide the requested discovery was certainly reasonable under the circumstances, given the fact that it was one of the three alternatives specifically proposed by both the commonwealth and the Pennsylvania State Police, in their respective motions for reconsideration.

And so, for these two reasons, we respectfully request that the July 19, 2010 and August 2, 2010 orders of this court be affirmed.